# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-61277-BLOOM/White

GARY LUCAS,

      Plaintiff,

v.

OFFICER CABEZAS and
OFFICER ARCHER,

      Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Officer Archer, Officer Cabezas and Officer Sinnes's (together, "Defendants") Motion for Summary Judgment, ECF No. [54] ("Motion"), filed on April 4, 2018. *Pro se* Plaintiff Gary Lucas ("Plaintiff") filed a Response, ECF No. [57], to which Defendants filed a Reply, ECF No. [61]. For the reasons set forth below, the Motion is denied.

## I.     INTRODUCTION

This action arises as a result of an encounter between Plaintiff and the Defendants in 2017. According to the Amended Complaint, ECF No. [18], Plaintiff was outside his sister's house, when Officer Cabezas and Officer Archer exited their police vehicle after realizing that Plaintiff had an active warrant for felony violation of probation. ECF No. [18] ¶ 1. Plaintiff then ran into the house and attempted to flee from the Officers by breaking a window in the back. *Id.* ¶ 2. Officer Cabezas and Officer Archer were able to apprehend Plaintiff. *Id.* According to Plaintiff, in effectuating his arrest, the Officers wrestled Plaintiff to the ground and punched and kicked him while placing him in handcuffs. *Id.* ¶ 3. Officer Cabezas was slamming Plaintiff's

face into the hood of an SUV parked behind the house, while Officer Archer had Plaintiff restrained. *Id*. After Plaintiff alerted the Officers that a home surveillance system may be recording them, Officer Archer signaled to Officer Cabezas, so they moved Plaintiff to the rear of the SUV where they, along with Officer Sinnes who had arrived on scene, continued to punch Plaintiff. *Id*. ¶¶ 3-4. At that point, Plaintiff alleges he was clipped from behind by Officer Cabezas while he was handcuffed, and he fell on his right side onto the concrete, where Officer Cabezas punched Plaintiff and another Defendant kicked him. *Id*. ¶ 5. Plaintiff was not resisting, and was subsequently lifted from the ground and placed into a police vehicle. *Id*. As a result, Plaintiff alleges that he suffers from headaches, neck pain, right shoulder pain, and lower back pain. *Id*. ¶ 8. In the Amended Complaint, he asserts a claim against Defendants for excessive use of force in violation of his Fourth Amendment rights, pursuant to 42 U.S.C. § 1983.

## II.     RELEVANT FACTS[1]

The Court is able to discern the following undisputed facts from the parties' filings: Officers Archer and Cabezas were patrolling in a marked police unit on the 2200 block of Forrest Street in Hollywood, Florida on May 19, 2017. ECF No. [54] ¶ 1. The Officers observed Plaintiff on the sidewalk in front of 2239 Forrest Street, and knew him to have an active felony warrant. *Id*. ¶ 2. When Officer Cabezas exited the vehicle to make contact with Plaintiff, Plaintiff ran into the open residence at 2239 Forrest Street. *Id*. ¶¶ 3-4. Officer Cabezas gave Plaintiff verbal commands to stop. *Id*. ¶ 5. In the meantime, Officer Archer exited the vehicle and proceeded to the back of 2239 Forrest Street in order to intercept Plaintiff if he attempted to

---

[1] The Court notes at the outset that Plaintiff is proceeding *pro se* in this matter, and is therefore entitled to some leniency with respect to his filings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and [are] liberally construed.").

exit the back of the residence. *Id.* ¶ 6. Plaintiff broke a window in the back of the house and exited, whereupon Officer Cabezas caught up to him and attempted to take him into custody. *Id.* ¶¶ 7-8. Plaintiff began to struggle with Officer Cabezas, and both Officer Cabezas and Officer Archer gave Plaintiff verbal commands to stop resisting, which Plaintiff failed to obey. *Id.* ¶¶ 9-12. Specifically, Plaintiff resisted by pulling, pushing, tensing and bracing his arms to his chest with a closed fist. *Id.* ¶ 13. Plaintiff and Defendants struggled, and Plaintiff was eventually taken into custody. *Id.* ¶ 14.

At this point in the encounter, the parties dispute the relevant facts. According to Plaintiff, after he was placed in handcuffs, Officer Cabezas clipped him from behind, and he was beaten by Defendants. ECF No. [57] ¶¶ 34, 37. Defendants, however, deny ever punching, kicking, clipping, or slamming Plaintiff's head into an SUV. ECF No. [54] ¶¶ 16-21. In addition, Officer Sinnes states that he had no physical contact with Plaintiff, as he arrived on scene after Plaintiff was taken into custody, and only present to test a white substance in a plastic baggie that fell from Plaintiff's hand during the course of his arrest. *Id.* ¶ 24; ECF No. [57] at 11, ¶ 1. Nevertheless, Plaintiff contends that since Officer Sinnes's unit is the vehicle that Plaintiff was put into after his arrest, Officer Sinnes must have arrived in time to witness, if not participate in, the beating. ECF No. [57] ¶¶ 21-26.

## III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non

moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty* , 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## IV. ANALYSIS

### A. A genuine issue of material fact remains regarding the force used after Plaintiff was handcuffed

Defendants seek summary judgment on Plaintiff's claim of excessive force on the basis that the only force used to take Plaintiff into custody was the amount of force necessary and in response to Plaintiff's resistance. The Court would agree with Defendants if Plaintiff's claim concerned the amount of force used during the course of his arrest. However, as Plaintiff points out, his claim is premised upon the force Defendants used after he was already handcuffed, in custody, and no longer resisting. The Defendants do not address this claim in their Motion or Reply. According to Plaintiff, his claim is not based upon any actions taken by Officers Archer or Cabezas prior to Plaintiff being in handcuffs. ECF No. [57] ¶ 2. Indeed, the only evidence provided by Defendants in support of their Motion are their denials. Those claims that none of them punched, kicked, or struck Plaintiff from behind are directly contradicted by Plaintiff's allegations and statements. Plaintiff claims that after he was handcuffed, he was clipped from behind by Officer Cabezas and fell onto the concrete where Officer Cabezas proceeded to punch

him while one of the other Defendants kicked him. "[T]he application of gratuitous force on an already-handcuffed and compliant detainee or arrestee constitutes excessive force in violation of the Fourth Amendment, even if there is no visible or compensable injury." *Gomez v. United States*, 601 F. App'x 841, 850 (11th Cir. 2015). Accordingly, Defendants are not entitled to summary judgment, as a genuine issue of material fact remains with respect to whether the amount of force Defendants used on Plaintiff after he had already been handcuffed was excessive.

### B. Defendants are not entitled to qualified immunity

Defendants also argue that they are entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)), and the doctrine accordingly represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231. (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* at 1232 (quoting *Lee*, 284 F.3d at 1194); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) ("To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting within the scope of his discretionary authority.") (citation omitted). In the instant case, there is no dispute that Defendants were acting within the scope of their discretionary authority.

Once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the officers violated a constitutional right; and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). The Supreme Court has outlined a two-part test to determine whether a plaintiff meets his burden: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. Plaintiff contends that Defendants used excessive force against him after he was handcuffed, which would constitute a violation of his Fourth Amendment rights. *Gomez*, 601 F. App'x at 850.

Therefore, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly

established.'" *Vinyard*, 311 F.3d at 1346 (quoting *Saucier*, 533 U.S. at 201). "For an asserted right to be clearly established for purposes of qualified immunity, 'the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000) (quoting *Lassiter v. Ala. A&M Univ. Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir. 1994)). "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009) (internal citations omitted). "[O]nly Supreme Court cases, Eleventh Circuit case law, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d 1220, 1231-32 (11th Cir. 2004) (citations omitted). "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

There is a critical difference between the use of force against unrestrained individuals and individuals who have already been handcuffed, which was evident in the case law at the time of Plaintiff's arrest. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (officer's punch

constituted excessive force where the suspect was handcuffed and not struggling or resisting); *Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000) (evidence that plaintiff did not struggle after being handcuffed was sufficient to raise a question of fact as to the use of force applied once he was restrained); *Saunders v. Duke*, 766 F.3d 1262, 1265, 1267-68 (11th Cir. 2014) (citations omitted) (no qualified immunity where officers slammed plaintiff's head into the ground with extreme force even though the plaintiff was handcuffed and was not resisting or attempting to flee). Indeed, "a handcuffed, non-resisting [suspect's] right to be free from excessive force was clearly established [by] February 2002." *Hadley*, 526 F.3d at 1333. In the instant case, Defendants have provided no evidence to indicate that Plaintiff continued to resist after he was handcuffed, and therefore, no reasonable officer could have believed that the force Plaintiff contends was used upon him was permissible. Accordingly, Defendants are not entitled to qualified immunity.

## V. CONCLUSION

For the reasons set forth, Defendants' Motion, **ECF No. [54]**, is **DENIED**. The Court will separately enter a Scheduling Order for Calendar Call and Trial.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of December, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Gary Lucas, *pro se*
Broward County Jail-NBB
North Broward Bureau
Inmate Mail/Parcels

Post Office Box 407037
Fort Lauderdale, FL 33340